**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TRES TECH CORPORATION,** | § | |
| **Petitioner/Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:13-mc-01800-K** |
| **v.** | § | |
| | § | |
| **CAREFUSION CORPORATION,** | § | |
| **Respondent/Defendant** | § | |

---

**BRIEF IN SUPPORT OF RESPONDENT CAREFUSION CORPORATION'S
OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD AND CROSS-
MOTION TO VACATE AWARD**

---

## TABLE OF CONTENTS:

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

   **A.** This Action Should Be Transferred to California ............................................... 1

   **B.** In the Alternative, the Award Should be Vacated For Lack of Jurisdiction ....................... 2

   **C.** In the Second Alternative, the Award Should be Vacated on Any One of Three Separate
Substantive Grounds ................................................................................................ 3

ARGUMENT ................................................................................................................... 4

   **A.** The Award Should Be Vacated For Lack of Jurisdiction ...................................... 4

      1. CF Corp Did Not Arbitrate with Tres Tech. ................................................. 4

      2. The Award May Be Vacated for Lack of Jurisdiction ................................... 6

      3. CF Corp was Not Subject to the Panel's Jurisdiction ................................... 7

      4. Any Award against CF Corp Should be Vacated For Lack of Jurisdiction ................. 10

i

**B.**   In the Alternative, the Award Should Be Vacated Based on the Panel's Application of its "Own Brand of Industrial Justice" .............................................................................. 11

  **1.**   Facts Underlying the Arbitration Award ........................................................... 11

    **i.**   The Royalty Agreements .................................................................. 11

    **ii.**   The Patents ..................................................................................... 12

    **iii.**   The Dispute ..................................................................................... 13

    **iv.**   The Parties ....................................................................................... 16

  **2.**   The Panel Exceeded its Authority on the Counterclaim of Patent Misuse ................... 16

  **3.**   The Panel Exceeded its Authority by Considering Parol Evidence .............................. 18

  **4.**   The Panel Exceeded its Authority by Reforming the Contract .................................... 21

**CONCLUSION** ...................................................................................................... **22**

**RESPONSE TO TRES TECH'S MOTION TO CONFIRM ARBITRATION AWARD.... 22**

## TABLE OF AUTHORITIES:

**Cases**

Bridas Sapic v. Gov't of Turkmenistan, 345 F.3d 347 (5th Cir. 2003) ............................... passim

Brulotte v. Thys Co., 379 U.S. 29 (1964) ................................................. 14, 16, 17, 18

Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009)..................................... 11

Comedy Club, Inc. v. Improv West Assoc., 553 F.3d 1277 (9th Cir. 2009) ............................... 11

Consolidated World Invest., Inc. v. Lido Preferred Ltd., 9 Cal. App. 4th 373 (Cal. App. 1992). 19

DK Joint Venture v. Weyand, 649 F.3d 310 (5th Cir. 2011)......................................................... 6

Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384 (2006).............................................................. 21

Finnegan v. Spiegl Farms, Inc., 234 Cal. App. 2d 408 (Cal. App. 1965)..................................... 16

Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir. 2000) ................................. 6

In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008)............................................... 23

Kanematsu Corp. v. Multimedia Acc. & Retrieval Corp., 2002 U.S. Dist. LEXIS 19151, Civ. A. No. C-02-1543-SC (N.D. Cal. Oct. 7, 2002) .......................................................... 25

Major League Baseball Players Assn v. Garvey, 532 U.S. 504 (2001)........................................ 11

Nordion Int'l, Inc. v. Medi-Physics, Inc., No. 95 C 1323, 1995 U.S. Dist. LEXIS 12639 (N.D. Ill. Aug. 29, 1995) ............................................................................................................. 16

Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33 (1968) ..... 19, 21

Scheiber v. Dolby Labs., Inc., 293 F.3d 1014 (7th Cir. 2002)....................................................... 16

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010) ............................... passim

Veltman v. Norton Simon, Inc., 425 F. Supp. 774 (S.D.N.Y. 1977)............................................. 17

Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 (1989) ............................................................................................................................................ 3

Wagner v. Columbia Pictures Indus., L., Inc., 146 Cal. App. 4th 586 (Cal. App. 2007) ................. 19

Westmorland v. Sadoux, 299 F.3d 462 (5th Cir. 2002)................................................................. 7

Zila, Inc. v. Tinnell, 502 F.3d 1014 (9th Cir. 2007) ...................................................... 16, 17, 18

**Statutes**

28 U.S.C. § 1404............................................................................................................................ 2, 23

9 U.S.C. § 10 .................................................................................................................................. 10, 22

9 U.S.C. § 9..................................................................................................................................... 10

Cal. Civ. Code § 1639.................................................................................................................... 19

Cal. Civ. Code § 1647.................................................................................................................... 19

California Civil Code 3399 ............................................................................................................ 21

## INTRODUCTION

Tres Tech brought its motion against the wrong party and in a less convenient venue then the California Action.  As such, CF Corp respectfully suggests the Court defer action on this motion until after the Court acts on the concurrently filed Motion to Transfer.  Alternatively (or if the Motion to Transfer should be denied), CF Corp respectfully opposes the motion to confirm the Award against CF Corp as it was not a party to the arbitration or within the jurisdiction of the arbitration panel.  Moreover, the Award itself is improper for the reasons described below.

## SUMMARY OF THE ARGUMENT

### A.    This Action Should Be Transferred to California

As set forth in greater detail in CF Corp's concurrently filed Motion to Transfer, the Arbitration Panel issued its Award in the underlying action with a caption that refers to CF Corp, instead of the separate and distinct legal entity –CareFusion 202, Inc. ("CF 202") – that actually appeared and litigated the arbitration.  The body of the Award refers to "CareFusion" without specifying whether that name refers to the Corporation or 202, Inc.[1]  Appendix to CareFusion Corporation's Motion to Transfer Action to Northern District of California and Cross-Motion to Vacate Award ("Appx.") at 53 (the "Award").  Despite Tres Tech itself having recognized that CF 202 was "wrongly named as" CF Corp in the original arbitration demand and similarly recognized that CF 202 filed a counterclaim in the arbitration proceedings, Tres Tech seeks to confirm the Award against the wrong party.

---

[1]      The Award consistently refers, however, to "CareFusion's" briefing.  See, e.g., Appx. at 54, 57. All such arguments and briefing were submitted by CF 202 (not CF Corp.).  For example, the Award at 8 cites to "CareFusion's Post-Hearing Brief."  That Brief was submitted by CF 202.  Appx. at 110, 128.  Thus, it is apparent that the Award's caption was merely a clerical error.  In addition to the caption page, the body of the Award references CareFusion Corporation one additional time, where it orders Tres Tech to repay it certain arbitration fees. Appx. at 73.

Tres Tech has not taken this unusual position because of a concern over solvency or the capability of CF 202 to satisfy any judgment.  Rather, Tres Tech is jockeying to win a race to the courthouse based on what appears to have been a clerical error on the part of the Panel.  Tres Tech rushed to file this anticipatory suit against the wrong party in this court (and without conducting a meet and confer with opposing counsel prior to its filing as required by the local rules, during which it would have learned of its error) in an attempt to gain "first filed" status vis-à-vis CF 202's motion to vacate which was filed 17 hours later in U.S. District Court, Northern District of California.  Even after the error was brought to Tres Tech's attention, it refused to withdraw its motion against CF Corp or seek to amend its motion to address CF 202.  Instead, Tres Tech has taken the position that only CF Corp, and not CF 202, was the subject of the Award and thus CF 202 does not have standing to challenge the Award.  Appx. at 106.

As the party that participated in the Arbitration proceeding, CF 202 has challenged the award in the California Action by filing a motion to vacate.  This action should be transferred to the Northern District of California so that it may be joined with the first correctly filed action that is currently pending in that forum.  Moreover, the appropriate factors that are considered in connection with a transfer under 28 U.S.C. § 1404(a) weigh heavily in favor of transfer.  The Northern District of California has a localized interest over the arbitration which was held within its jurisdiction, and the California court is more familiar with California law governing the contract at issue in the arbitration.

## B.      In the Alternative, the Award Should be Vacated For Lack of Jurisdiction

Under Fifth Circuit law, a party cannot be bound by an Arbitration proceeding it did not consent to participate in.  *Bridas Sapic v. Gov't of Turkmenistan*, 345 F.3d 347, 353 and n.3 (5th Cir. 2003) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489

U.S. 468, 478 (1989) ("The FAA does not require parties to arbitrate when they have not agreed to do so"). CF Corp did not consent, explicitly or implicitly, to the jurisdiction of the arbitration Panel or to arbitration of this matter, only CF 202 did.   Although Tres Tech originally filed its arbitration demand naming CF Corp instead of CF 202, once Tres Tech was made aware of the error, it and CF 202 consistently litigated the case as to CF 202; not CF Corp and the arbitration proceeded only between Tres Tech and CF 202.   To the extent that the Court adopts Tres Tech's allegations (contrary to its conduct in the case) that the Panel purposefully issued an award against CF Corp (as opposed to making a clerical error), the Panel clearly exceeded its authority, and thus the Award cannot be confirmed against CF Corp, and it should be vacated.

**C.     In the Second Alternative, the Award Should be Vacated on Any One of Three Separate Substantive Grounds**

Should the Court find that CF Corp was within the Panel's jurisdiction, the Award should be vacated on three separate grounds where the Panel "stray[ed] from interpretation and application of the agreement and effectively dispens[ed] [its] own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010).

First, The Panel strayed from interpreting or applying the Royalty Agreement in deciding whether the agreement constituted patent misuse.   Whenever a contract for patent royalties requires royalties to be paid after the patent expires (as is the case here), and that same contract does not also provide for a discounted royalty rate after the patent expires (as is the case here), the portion of the contract calling for post-expiration royalties is ***per se*** illegal and unenforceable. Here, the Panel recognized the appropriate law and recognized that the above two criteria were met, but nevertheless exceeded its powers by failing to apply *per se* illegality to the contract.

Second, California law is abundantly clear that a written, integrated contract should be construed on the basis of the writing alone, without resort to parol evidence, to the extent

possible.  Even if parol evidence is available for consideration, that evidence can only support an interpretation to which the written language is ***reasonably susceptible.***  Here, Tres Tech proffered a far-fetched and unreasonable interpretation of the contract untethered to the actual contract language.  The Panel used parol evidence to support Tres Tech's interpretation without making a critical threshold finding that the written language is reasonably susceptible to Tres Tech's interpretation.  The Panel's interpretation of the agreement thus improperly used parol evidence to "stray from interpretation and application of the agreement" and the Panel used parol evidence to dispense its "own brand of industrial justice," separately warranting vacation of the Award.  *Stolt-Nielsen,* 130 S. Ct. at 1767.

Finally, the Panel's Award makes it readily apparent that the Panel did not apply the actual words of the contract in its analysis of the unexpressed "intent" of the signatories to the contract.  The Panel's interpretation of the contract was not tied to the words of the Agreement, but was instead a reformation of the contract based on the "intent" of the drafters in light of their mutual mistake in drafting the contract.  However, under California law, the Panel was not permitted to reform the contract.  The Award should be vacated on these grounds as well.

## <u>ARGUMENT</u>

**A.     The Award Should Be Vacated For Lack of Jurisdiction**

**1.     CF Corp Did Not Arbitrate with Tres Tech.**

The relevant facts are largely the same as those set forth in the concurrently filed motion to transfer.  For the convenience of the Court, an abbreviated version of those facts is included:

This action stems from a dispute concerning a 1995 contract between Tres Tech and SensorMedics Critical Care Corporation (SMCCC) that resulted in Tres Tech filing an arbitration demand.  Appx. at 6-19 (the "Royalty Agreement"); Appx. at 21-22 (the "Demand").  The

Demand wrongly named CF Corp instead of CF 202 (the successor-in-interest to SMCCC) as the Respondent. Appx. at 21. In reply to the Demand, CF 202 (not CF Corp) filed a response and counterclaim noting Tres Tech's mistake. Appx. at 24. Shortly thereafter, Tres Tech and CF 202 entered into a stipulation that expressly stated that CF 202 had been wrongly named CF Corp in Tres Tech's arbitration demand. Appx. at 34.

Tres Tech regularly captioned its arbitration pleadings and discovery requests with CF 202 (not CF Corp) as the respondent and counter-claimant. Appx. at 38-46. All Stipulations submitted by the parties in the Arbitration, including the stipulation of undisputed facts that formed the basis of the hearing, were executed between Tres Tech and CF 202 (and not CF Corp.). Appx. at 48-51 (Joint Statement of Stipulated Facts). In their pre-hearing stipulation, Tres Tech and CF 202 expressly stipulated that SMCCC was a predecessor-in-interest of CF 202. Appx. at 48, Stip. No. 8.

In short, while Tres Tech originally and erroneously named CF Corp in its Arbitration Demand, once this error was brought to its attention, it and CF 202 arbitrated the case as against each other. Tres Tech *never once*, after being advised of the error, alleged that it was still pursuing CF Corp or that CF 202 was the incorrect party. Other than being wrongly named in the Demand, CF Corp does not have any connection to the arbitration. CF Corp did not sign the 1995 Agreement and is not mentioned therein. Appx. at 6-19. CF Corp has no written agreement with Tres Tech to arbitrate any dispute, including the one at issue here. Tres Tech submitted no evidence in the arbitration that CF Corp was a successor-in-interest to SMCCC or the 1995 Agreement. Appx. at 1, ¶1. The Panel similarly never made such a finding. *Id*.

The arbitration took place in San Francisco, California on February 18-20 between Tres Tech and CF 202, not between Tres Tech and CF Corp. Appx. at 240 ("Declaration of F.T.

Alexandra Mahaney").  On April 15, 2013, the Panel issued its Award.  Appx. at 53-78 (the "Award").  The caption of the Award corresponded to the originally filed case caption and named CF Corp.  Appx. at 53.  The body of the Award referred to "CareFusion" without directly specifying whether "CareFusion" meant CF 202 (the party in the arbitration) or CF Corp (the party in the original case caption).  However, the Panel consistently discussed "CareFusion's" contentions by referencing arguments that were made by CF 202.  Appx. at 54, 57.   Similarly, the Panel referred to CF 202's Post-Hearing Brief as "CareFusion's Post-Hearing Brief."  Appx. at 60.  The Panel thus consistently identified "CareFusion" with the claims and arguments advanced by CF 202.[2]

## 2.    The Award May Be Vacated for Lack of Jurisdiction

Under the Federal Arbitration Act, an arbitration award can be vacated for any of several enumerated reasons, one of which is that "the arbitrators exceeded their powers."  *DK Joint Venture v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011).   Arbitrators exceed their powers by issuing an Award outside of their jurisdiction.  In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause.  *See, e.g.*, *Bridas Sapic v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003); *accord Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (noting that "arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory").  In rare circumstances, a third party to a contract may be bound to submit to arbitration, but only six theories for binding a nonsignatory to an arbitration agreement have been recognized in the Fifth Circuit:  (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.  *Bridas Sapic*,

---

[2]    The last page of the Award ordered Tres Tech to reimburse "CareFusion Corporation" an amount for excess fees and costs.  Appx. at 21.  This too seems to be a clerical error. Moreover, the Panel did not tie its use of "CareFusion Corporation" to its previous use of "CareFusion" throughout the Award.

345 F.3d at 355-356; *accord Westmorland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (holding that arbitration agreements may apply to nonsignatories only "in rare circumstances") (cited in *Bridas*, 345 F.3d at n.3). None of those jurisdictional theories provide the arbitrators with jurisdiction over CF Corp. CF Corp never agreed to arbitrate this dispute with Tres Tech, thus if the Panel issued an Award against CF Corp, the Panel's Award should be vacated.

Assuming *arguendo* the Court finds that the Panel asserted jurisdiction over CF Corp (instead of, or in addition to, CF 202), the Panel's finding is not entitled to any deference. This Court should decide in the first instance whether CF Corp agreed to the arbitration. *DK Joint Venture*, 649 F.3d at 317.

### 3.    CF Corp was Not Subject to the Panel's Jurisdiction

CF Corp is not bound to arbitrate because it did not sign a contract containing an arbitration clause. *Bridas Sapic*, 345 F.3d at 353. Here, it is undisputable that CF Corp. did not sign the contract at issue in the arbitration. That agreement was, in fact, signed only by Tres Tech and one other party, Sensormedics Critical Care Corporation ("SMCCC"). Appx. at 19. Because CF Corp did not sign the Royalty Agreement, the Royalty Agreement itself does not bind CF Corp to arbitration.

Similarly, CF Corp is not bound by any one of the six theories under which Courts in rare instances find non-signatories should be bound to arbitrate. *Bridas Sapic*, 345 F.3d at 355-356; *Westmorland*, 299 F.3d at 465. *First,* CF Corp is not bound to arbitrate under incorporation by reference. Tres Tech has never asserted that there is a separate contractual agreement between Tres Tech and CF Corp to arbitrate their disputes that should be incorporated by reference into the Royalty Agreement. Indeed, no such separate contractual agreement exists.

*Second,* CF Corp is not bound to arbitrate on the grounds that it assumed an obligation to arbitrate. As Tres Tech and CF 202 jointly stipulated in the arbitration, the original signatory to the Royalty Agreement (SMCCC) is a predecessor-in-interest of CF 202. Appx. at 48, Stip. No. 8. As the accompanying Declaration of Nathaniel B. Sisitsky shows, CF Corp and CF 202 are **separate and distinct** legal entities. Appx. at 228-239. Indeed, they are not even directly connected to each other as parent and child corporations, but in fact are separated from each other by a **third** corporation, CareFusion 2200, Inc. ("CF 2200"). Tres Tech has provided no basis to suggest that their corporate identities should not be respected. Thus, to the extent SMCCC's obligation to arbitrate was assumed by any other entity, it was assumed by CF 202 (the entity that participated in the arbitration), and not the Respondent named in this action.

*Third*, CF Corp is not bound to arbitrate under an agency theory. Agency is "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Bridas Sapic*, 345 F.3d at 356-57. The original signatory to the Agreement, SMCCC, is entitled a presumption of independent status and there is no evidence to rebut the presumption that SMCCC signed the Royalty Agreement on its own behalf. *Id.* Tres Tech has alleged no facts establishing agency because none exist.

*Fourth*, CF Corp is not bound to arbitrate under an alter ego theory. A corporation may be bound by an agreement entered into by its subsidiary regardless of the agreement's structure or the subsidiary's attempts to bind itself alone to its terms, "when their conduct demonstrates a virtual abandonment of separateness." *Id.* at 358-359. "Courts do not lightly pierce the corporate veil even in deference to the strong policy favoring arbitration." *Id.* "The corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if

(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.  *Id*.  Neither of those conditions is met here.  SMCCC was not owned by CF 202 or CF Corp at the time the Royalty Agreement was executed, so neither entity could have exercised complete control over SMCCC with respect to the Royalty Agreement.  Further, Tres Tech has made no allegation of fraud, wrongdoing, or injury in asserting jurisdiction against CF Corp here.  Nor could it.

*Fifth*, CF Corp is not bound to arbitrate under the grounds of estoppel.  CF Corp did not initiate these arbitration proceedings, and when Tres Tech named CF Corp in its Demand for Arbitration, CF 202 promptly responded to the Demand by stating that CF Corp was wrongly named in the Demand.  Appx. at 24.  Tres Tech recognized that CF Corp was wrongly named in the Demand in a subsequent stipulation regarding the locale of the arbitration and the selection of arbitrators.  Appx. at 34 (reciting that Tres Tech "filed and served an arbitration demand against Respondent and Counter-claimant CareFusion 202, Inc. . . . (wrongly named as CareFusion Corporation in the demand).).  Subsequently, Tres Tech's response to CF 202's counterclaim included CF 202 in the case caption and stated that "Tres Tech Corporation . . . files this Response to CareFusion 202, Inc.'s . . . Counterclaim".  Appx. at 38.  Tres Tech's discovery requests were directed to CF 202, Appx. at 41, and Tres Tech's briefing before and after the arbitration hearing included CF 202 in the case caption.  Appx. at 131-33.  Tres Tech and CF 202 further entered into a factual stipulation prior to the Arbitration. Appx. at 48-50 (Joint Statement of Stipulated Facts).  If estoppel is to be applied here, it should be applied *against* Tres Tech

because Tres Tech, on numerous occasions, represented that the arbitration was between it and CF 202.[3]

*Finally*, CF Corp is not bound to arbitrate as a third-party beneficiary of the contract under Fifth Circuit law.  "Under third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed."  *Bridas*, 345 F.3d at 362.  "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary."  *Id*.  Parties are presumed to be contracting for themselves only, which presumption may be overcome only if the intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract."  *Id.*  Here, the Royalty Agreement does not evidence any intent to make CF Corp a third-party beneficiary.  Even if it did, the Fifth Circuit has declined to bind a third party to arbitrate a dispute that the third party itself did not initiate in court.  *Id*. at 363.

### 4.    Any Award against CF Corp Should be Vacated For Lack of Jurisdiction

Despite the fact that the case was litigated solely against CF 202, Tres Tech argues (solely for jurisdictional reasons) that the Award was issued against CF Corp, which was not a party to the arbitration and did not consent to the arbitration.  Since the Panel lacked jurisdiction over CF Corp, any award that could have issued against CF Corp should be vacated pursuant to 9 U.S.C. § 10(a)(4) on the grounds that the Arbitrators exceeded their authority.  Thus, the Award cannot be confirmed against CF Corp because it was issued without authority.  9 U.S.C. § 9

---

[3] In the California Action, Tres Tech has offered several unsubstantiated arguments that CF Corp consented to the Arbitration proceeding.  First, it alleged that CF Corp had a lawyer present at the hearing on its behalf.  Not true. Appx. at 240 ("Declaration of F.T. Alexandra Mahaney").  Second, Tres Tech references typographical errors in documents, such as the fact that the signature line of the CF 202's Response to Tres Tech's Demand (where CF 202 explicitly states that CF Corp was a wrongly named party) contains "CareFusion Corporation" in the signature line. But jurisdiction is not based on typographical errors.  Jurisdiction is based on the existence of an agreement to arbitrate.  *See, e.g.*, *Bridas Sapic v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003).  Tres Tech simply does not have a good-faith basis to allege that an agreement to arbitrate exists between Tres Tech and CF Corp.

("Any party to the arbitration may apply . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated . . .").

**B.      In the Alternative, the Award Should Be Vacated Based on the Panel's Application of its "Own Brand of Industrial Justice"**

Should the Court find that this action should not be transferred and that CF Corp was the subject of the Panel's Award and subject to its jurisdiction, CF Corp submits the Award should not be confirmed, but should be vacated for at least the following three reasons set forth in greater detail below.   Courts are generally deferential to arbitration awards, but the Supreme Court has held that, "an arbitration may be vacated under §10(a)(4) of the FAA on the grounds that the arbitrator 'exceeded [his] powers,'" "when [an] arbitrator strays from interpretation and application of the agreement and 'effectively dispense[s] his own brand of industrial justice.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010) (quoting *Major League Baseball Players Assn v. Garvey*, 532 U.S. 504, 509 (2001) (*per curiam*)).[4]   The Panel's Award exceeded its powers in three respects, each is sufficient to warrant vacation of the Award.

**1.      Facts Underlying the Arbitration Award**

**i.      The Royalty Agreements**

This dispute concerns the expiration provision of the Royalty Agreement executed in 1995 by Tres Tech and SMCCC.   Appx. at 6-19 (the "Royalty Agreement").   CF 202 did not participate in the negotiation or execution of the Royalty Agreement, but CF 202 acquired

---

[4]  The Supreme Court did not reach a conclusion in *Stolt-Nielsen* as to whether an Award may be appropriately vacated based on a "manifest disregard for the law." *Id.* at n.3.  Prior to *Stolt-Nielsen,* the Fifth Circuit held that "manifest disregard for the law" is not an appropriate grounds for vacating an arbitration award. *See, e.g., Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009). Meanwhile, the Ninth Circuit continues to recognize "manifest disregard for the law" as an appropriate basis to vacate an arbitration award. *See, e.g., Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1281 (9th Cir. 2009).  To the extent Fifth Circuit law is in conflict with the holding in *Stolt-Nielsen*, *Stolt-Nielsen* controls.

---

SMCCC's rights under the Royalty Agreement through a long series of acquisitions and commercial transactions summarized in the table in section 4 below.

By way of background, the Royalty Agreement was a renegotiation of another Royalty Agreement signed in 1989 between Tres Tech and SMCCC's parent company, Sensormedics Corporation ("Sensormedics").   Appx. at 135-148 (the "1989 Agreement").  Similarly, the 1989 Agreement expressly superseded and replaced an earlier Patent and Technology Transfer, Manufacturing, and Marketing Agreement (the "1984 Agreement") between Tres Tech's predecessor in interest, Texas Research Inc. ("TRI"), and Sensormedics' predecessor in interest, Gould, Inc. ("Gould").   Appx. at 150-180.  The 1984 Agreement transferred certain HFV patents and technology from TRI to Gould in exchange for an agreed upon royalty and lump sum payments.   A complete listing of the HFV patents transferred under the 1984 Agreement is included in the section on "Patents" below.

### ii.        The Patents

The Award discusses several different patents, including the Jensen Patents, the Rauterkus Patent, and the Fox Patent.  The Jensen Patents were the only HFV patents transferred from TRI to Gould pursuant to the 1984 Agreement.   Appx. at 49, Stip. No. 34.  The Jensen Patents are listed below along with their expiration dates:

| Patent | Title | Expiration Date |
|--------|-------|-----------------|
| 4,719,910 | Oscillating ventilator and method | January 19, 2005 |
| 4,747,402 | High frequency ventilation method | May 31, 2005 |
| 4,805,612 | High frequency ventilation | February 21, 2006 |
| 4,821,709 | High frequency ventilator and method | April 18, 2006 |

The Rauterkus Patent was filed on April 1, 1992 (well after the initial Jensen patents were filed) and issued to Sensormedics as United States Patent No. 5,307,794.  Appx. at 48, Stip. No.

11.   The Rauterkus Patent was originally set to expire in May 2011, but by change of law, actually expired on April 1, 2012.  *Id.*

The Fox Patent was filed on March 17, 1998 and issued to Sensormedics as United States Patent No. 6,085,746.   Appx. at 50, Stip. No. 42.  The Fox Patent will expire on March 17, 2018.   *Id.*   The Fox Patent was not transferred from TRI to Gould pursuant to the 1984 Agreement.   Appx. at 50, Stip. No. 44.   CF 202's predecessors-in-interest developed the Fox Patent several years after the Jensen Patents were transferred from TRI to Gould.   Appx. at 199-200, 401:22-402:14; Appx. at 50, Stip. Nos. 42-44.

### iii.      The Dispute

The Royalty Agreement provides Tres Tech with a defined royalty on the manufacturing and rental of certain high frequency ventilator (HFV) products for a limited period of time.  The royalties expire upon "the expiration of the last of the ***HFV Patents***."   Appx. at 9, § II;  Appx. at 190-191, 25:22-26:5.   Two questions arose in the dispute:  1) What patents are the "HFV Patents?" and 2) When did/does the last of the "HFV Patents" expire?  The term "HFV Patents" was defined in Section 1.3 of the Royalty Agreement, which for the sake of simplicity, was stipulated to mean:

> **I.3   HFV Patents.**   The term "HFV Patents" shall mean the United States and foreign patents relating to high frequency ventilators which are owned by SMCCC subject to royalty and other obligations previously set forth in the [1984 Agreement].   These patents include [the Jensen patents and the Rauterkus Patent] as well as all patents which were the subject of the [1984 Agreement].

> Appx. at 49, Stip. Nos. 30-32.

The dispute arose because Tres Tech claimed that existing CF 202 patents, which Tres Tech never owned or developed, entitled Tres Tech to receive continuing royalty payments under the Royalty Agreement.  One such alleged "HFV Patent" was the Fox Patent.  Tres Tech initiated

Arbitration proceedings and the Agreement was to be construed under California law.   Appx. at 48, Stip. No. 10.

Two issues were incorrectly decided by the Panel in the affirmative:

- Can a Licensor of a patent avoid the per se rule of *Brulotte* and charge post-expiration royalties on their patent, by tying the royalty obligation termination date to a different, later patent that Licensor did not invent, own or have any claim to?

- Can the phrase "United States and foreign patents relating to high frequency ventilators which are owned by SMCCC subject to royalty and other obligations previously set forth in the [1984 Agreement]" include all patents which require high frequency ventilator technology even if those patents are not subject to royalty or other obligations under the 1984 Agreement?

The first issue arose from CF 202's defense and counterclaim of patent misuse.   The royalty payments at issue in this case originate from the transfer of the Jensen Patents from Tres Tech's predecessor-in-interest to CF 202's predecessor-in-interest in the 1984 Agreement. Besides the Jensen Patents, no other patents were transferred from Tres Tech to CF 202 pursuant to the 1984 Agreement.   Appx. at 49, Stip. No. 33.   Although the last of the Jensen Patents expired on April 18, 2006, by virtue of the inclusion of the Rauterkus Patent in the definition of "HFV Patents," the defined term of the Royalty Agreement lasted until the expiration of SMCCC's own Rauterkus Patent on April 1, 2012.   Appx. at 48-50, Stip. Nos. 11, 17, 21, 34-41. Neither side disputes that the Rauterkus Patent is listed within the definition of "HFV Patents" in the Royalty Agreement.   However, because the Rauterkus Patent was never owned by Tres Tech, CF 202 contends that any obligation to extend royalties beyond the term of the Jensen Patents and into the term of the Rauterkus Patent was illegal and unenforceable under binding Supreme Court law on patent misuse.   Moreover, Tres Tech's attempt to even further extend the royalty obligations under the Fox patent, which was neither covered nor mentioned by the Royalty Agreement is also misuse.   However, based on its own brand of industrial justice, the Panel

unanimously found that post-Jensen royalties contained in the Royalty Agreement were enforceable.  CF 202 respectfully asks the Court to vacate the Panel's Award in this respect.

The second issue arose from Tres Tech's affirmative claim for ongoing royalties.  Neither side disputed that the Royalty Agreement expired upon "the expiration of the last of the *HFV Patents*."  CF 202 contended that all of the patents that meet the definition of "HFV Patents" expired, and that the 1995 Agreement is, therefore, expired.  In a 2-1 decision relying on parol evidence, the Panel found that the term "HFV Patents," included an unlisted CF 202 patent (the Fox Patent) that expires on March 17, 2018.  The Fox Patent was admittedly not the work of Tres Tech, Mr. Jensen, or anyone outside of CF 202.  The Panel's finding improperly relied on parol evidence testimony about the "intent" of the contract without making a required finding that Tres Tech's interpretation reasonably fell within the scope of written language of the contract or even tying its interpretation to the actual contract language.  The Panel's failure to determine whether the Royalty Agreement was reasonably susceptible to Tres Tech's proposed interpretation caused the Panel to use parol evidence to stray from the contract so that the Panel could dispense its own brand of industrial justice.  CF 202 separately and independently asks the Court to vacate the Panel's Award in this respect.

Furthermore, by interpreting the term "HFV Patents" based solely on the "intentions" of the drafters, rather than the written language of the 1995 Agreement, the Panel actually reformed the 1995 Agreement based on a perceived mutual mistake.  In so doing, the Panel dispensed its own industrial justice in direct contravention of binding California law regarding contract reformation which protects the rights of innocent third parties, such as CF 202.  Improper reformation forms a third ground upon which the Court may vacate the Panel's Award.

iv.        **The Parties**

The subject contract and patents changed ownership throughout the course of these events.  The table below summarizes the various parties to the contracts and their respective roles.  Appx. at 48, Stip. Nos. 1, 3, 4, 5, 9;  Appx. at 217-220, 529:25-532:25; Appx. 223.

| Party | Summary Description |
|---|---|
| Texas Research Inc. | Original holder of rights to high-frequency ventilator ("HFV") Jensen patents and technology. |
| **Tres Tech Corporation** | Obtained TRI's assets and received royalties until present dispute arose. |
| Gould, Inc. | Acquired Jensen patents and technology from TRI. |
| Spectramed Cardiopulmonary, Inc. | Acquired HFV assets from Gould. |
| Sensormedics Corporation | Acquired HFV assets from Spectramed. |
| Sensormedics Critical Care Corp. | Was a spun-off entity from Sensormedics formed in 1994. |
| Thermo Electron Corporation | Purchased SMCCC in 1996. |
| Viasys Healthcare Inc. | Spun-off HFV assets from Thermo Electron in 2002. |
| Cardinal Health, Inc. | Purchased Viasys for $1.5 Billion in 2007. |
| **CareFusion 202, Inc.** | Spun-off HFV assets from Cardinal in 2009 and continued development/sales of HFV. |

2.        **The Panel Exceeded its Authority on the Counterclaim of Patent Misuse**

In *Brulotte v. Thys Co.*, the Supreme Court held "that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*."  379 U.S. 29, 32 (1964).  *Brulotte* and the Ninth Circuit's opinion following it in *Zila* directly control the outcome of CF 202's counterclaim for patent misuse.  *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007); *see also Finnegan v. Spiegl Farms, Inc.*, 234 Cal. App. 2d 408 (Cal. App. 1965); *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014 (7th Cir. 2002); *Nordion Int'l, Inc. v. Medi-Physics, Inc.*, No. 95 C 1323, 1995 U.S. Dist. LEXIS 12639 (N.D. Ill. Aug. 29, 1995); *Veltman v. Norton*

*Simon, Inc.*, 425 F. Supp. 774 (S.D.N.Y. 1977).  The Panel's refusal to apply *Brulotte and Zila* to the words of the agreement warrants vacation of the Award.

*Zila*, in interpreting *Brulotte* and progeny, applied two bright-line rules to royalty agreements involving patents.  First, "[i]f a patent ever issues on an invention, *Brulotte* applies, and ***no contract*** can properly demand royalty payments after the patent expires."  *Zila,* 502 F.3d at 1021-1022 (emphasis added).   Second, "a contract that provides for royalties either when a patent expires or when it fails to issue cannot be upheld unless it provides a discount from the alternative, patent-protected rate."  *Id* at 1021 and 1022 (adopting the majority approach).   The Panel was aware of this law and found facts that would require a holding of patent misuse. However, the Panel's refused to apply the words of the agreement to the bright-line rules announced in post-*Brulotte* cases such as *Zila*, "essentially dispens[ing] [its] own brand of industrial justice."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010).

According to the Panel's own factual findings, the patent applications underlying the Royalty Agreement that were transferred from Tres Tech and/or its predecessors to CF 202 and/or its predecessors matured into patents:  "In 1984, Texas Research Inc. ("TRI"), which had developed the basic high-frequency ventilator technology entered into a Patent and Technology Transfer, Manufacturing, and Marketing Agreement with Gould Inc.  That agreement provided for the transfer to Gould of proprietary technical information, drawings, data and the like as well as certain pending patent applications, which later ***matured into the Jensen Patents***."   Appx. at 55 (emphasis added).   Thus, *Brulotte* applies, and the Royalty Agreement cannot properly demand royalty payments after those issued patents expire.  *Zila,* 502 F.3d at 1021-1022 ("If a patent ever issues on an invention, ***Brulotte applies***, and ***no contract*** can properly demand royalty payments after the patent expires.") (emphasis added).  The last Jensen patent expired on

April 18, 2006.   Appx. at 49-50, Stip. Nos. 36-41.  Under the first bright line rule of *Zila*, the Royalty Agreement cannot legally demand royalty payments beyond the expiration of the last Jensen patent on April 18, 2006.

Further, as the Panel correctly found, the Royalty Agreement "does not reduce the royalty obligation 'on expiration' of the Jensen Patents," as required by the second bright line rule announced in *Zila*.   Appx. at 59; *Zila,* 502 F.3d at 1021-1022 ("[A] contract that provides for royalties either when a patent expires or when it fails to issue cannot be upheld unless it provides a discount from the alternative, patent-protected rate." ) (emphasis added).   Thus, under the second bright line rule as well, the Panel should have found that CF 202's obligation to pay royalties beyond April 18, 2006 was unlawful *per se*.  Appx. at 59.

Rather than apply the *Brulotte* test calling for *per se* illegality directly to the Royalty Agreement, the Panel attempted to justify its finding that there was no patent misuse by considering other factors in the contract that should not have been considered in a *per se* analysis.  Appx. at 57-62.  The Panel's ultimate finding resulted in a royalty obligation that extended for *12 years* after the underlying patents expired.  Appx. at 72.  The Panel improperly ignored the contract and the applicable law, and erroneously found that there was no patent misuse based on its own "industrial justice."   *Stolt-Nielsen,* 130 S. Ct. at 1767 (2010).  On that ground, the Award should be vacated.

### 3.    The Panel Exceeded its Authority by Considering Parol Evidence

The Panel similarly ignored the words of the contract in favor of parol evidence should not have been considered under California law.   Appx. at 69 ("On balance, a majority of the Panel finds that the definition of 'HFV Patents' in I.3 is ambiguous.  Such ambiguity which is not clarified sufficiently by other terms of the agreement brings into play parol evidence in spite

of the integration clause, including the negotiation history of the 1995 Royalty Agreement and whatever such negotiation establishes about the intent of the parties."). The Panel's inappropriate use of parol evidence constituted an impermissible "brand of industrial justice" that separately and independently warrants vacation of the Award. *Stolt-Nielsen,* 130 S. Ct. at 1767 (2010).

Under California law, "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to other provisions of the California Code." Cal. Civ. Code § 1639. Although "a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates," Cal. Civ. Code § 1647, such evidence is "admissible only to prove a meaning to which the contractual language is 'reasonably susceptible'; not to flatly contradict the express terms of the agreement." *Consolidated World Invest., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (Cal. App. 1992) ("Thus if the contract calls for the plaintiff to deliver to defendant 100 pencils by July 21, 1992, parol evidence is not admissible to show that when the parties said 'pencils' they really meant 'car batteries' or that when they said 'July 21, 1992' they really meant May 13, 2001."); *see also Wagner v. Columbia Pictures Indus., Inc.,* 146 Cal. App. 4th 586, 592 (Cal. App. 2007) ("[P]arol evidence is not admissible to show that when the parties 'said five hundred feet they agreed it should mean one hundred inches, or that Bunker Hill Monument should signify Old South Church.") (quoting *Goode v. Riley,* 153 Mass. 585 (1891)). As the California Supreme Court has noted, "extrinsic evidence is not admissible to add to, detract from, or vary the terms," of the agreement. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 39 (1968).

The relevant contractual language at issue is found in Section I.3 of the Royalty Agreement:

> I.3   HFV Patents.   The term "HFV Patents" shall mean the United States and foreign patents relating to high frequency ventilators which are owned by SMCCC subject to royalty and other obligations previously set forth in the [1984 Agreement].   These patents include [the Jensen patents and the Rauterkus Patent] as well as all patents which were the subject of the [1984 Agreement].   Appx. at 49, Stip. Nos. 30-32.

The definition of "HFV Patents" contains two sentences.   The first sentence includes the patents that were previously transferred pursuant to the 1984 Agreement, i.e. the Jensen Patents. These patents were "subject to royalty and other obligations" under the 1984 Agreement.   The second sentence of the definition of "HFV Patents" specifically lists the Jensen patents and adds the Rauterkus Patent, and reiterates that "HFV Patents" includes those patents which were the subject of the 1984 Agreement, i.e. the Jensen Patents.

Tres Tech's construction of the above provision was not based on a reasonable interpretation of the written language of the 1995 Agreement, but was instead based on a confusing and circular interpretation that was never supported by evidence.   The Panel summarized the confusing rationale behind Tres Tech's position as follows:

> Tres Tech basically argues that the reference to patents related to high frequency ventilators that are "subject to royalty and other obligations" previously set forth in the 1984 Agreement was intended to take account of the fact that the royalty obligation under the 1984 Agreement is not tied to patents.   They argue that the 'royalty and other obligations under the 1984 Agreement is contained in Paragraph 3.1 of that agreement which calls for royalties on "Equipment." "Equipment" is defined in Paragraph 1.14 of that Agreement as "apparatus or systems incorporating HFV Technology," with HFV Technology broadly encompassing the technology from TRI to Gould "whether or not patentable." The argument is that patents "subject to royalty and other obligations" means patents that cover, or in patent terms that claim, subject matter which would be subject to such obligations.   In effect, Tres Tech argues that while the asserted inventive improvement of the Rauterkus and Fox Patents may not meet the definition of Improvements in the 1984 Agreement, ***the inventions covered by the Rauterkus and Fox Patents and any product under those patents would have***

> been *"subject to royalty and other obligations under the 1984 Agreement" since the patents require use of the basic HFV Technology provided by TRI*.

Appx. at 67 (emphasis added).

Importantly, the Panel *never* found that the language of the 1995 Agreement was reasonably susceptible to Tres Tech's interpretation. The Panel was required to make such a finding before admitting parol evidence on the issue. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006). By failing to make a key threshold determination before turning to parol evidence on the meaning of the contract (which the Panel found to be dispositive), the Panel substituted its own "brand of industrial justice" (parol evidence) for the actual words of the agreement, ignoring key safeguards placed on the use of parol evidence by important California Supreme Court cases such as *Pacific Gas* and *Dore*.

### 4. The Panel Exceeded its Authority by Reforming the Contract

Formal reformation of the 1995 Agreement for mutual mistake was prohibited by Section 3399 of the California Civil Code:

> When contract may be revised. When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, *so far as it can be done without prejudice to rights acquired by third persons*, in good faith and for value.

Nevertheless, the Panel *sub silentio* reformed the 1995 Agreement in direct violation of *Stolt-Nielsen* which prevents the Arbitrator's application of "its own brand of industrial justice."

Here, the Panel erroneously gave effect to the "intent" of the drafters above the express contractual language. The Award does not focus on interpreting the actual language of the 1995 Agreement, which the Panel found "is not drafted with the care and attention that might normally

be expected in an agreement of this sort," but the contract instead was determined by "the direct testimony and cross-examination testimony of the two negotiators who negotiated the 1995 Royalty Agreement and by the drafting history of the agreement which helps provide instruction as to what the parties intended."   Appx. at 68-69.   Based on that testimony, the Panel found it "appropriate to give effect to the intention of the parties at the time of the 1995 Royalty Agreement." Appx. at 72.  But as the witness that the Panel relied upon testified at the hearing, he could not explain how the words of the contract lined up with the parties' intent, and his intent was better expressed by changing the language of the contract entirely.   Appx. at 201-206, 444:19-23; 458:2-462:2.  The Panel's *sub silentio* reformation of the contract, when reformation was neither plead nor proven nor allowed by California law, provides a separate basis upon which the Award may be vacated pursuant to 9 U.S.C. § 10(a)(4).

## CONCLUSION

For the above stated reasons, CF Corp respectfully requests that this Court deny Tres Tech's Motion to Confirm the Arbitration Award and grant this Cross-Motion.

## RESPONSE TO TRES TECH'S MOTION TO CONFIRM ARBITRATION AWARD

It is unclear whether CF Corp is required to respond to the Complaint-like allegations in Tres Tech's motion.  For completeness, CF Corp's response is below.

### The Parties

1.      CF Corp is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Motion to Confirm and, on that basis, denies them.

2.      Admitted.

**Jurisdiction & Venue**

3.      For the purposes of this action only, CF Corp does not dispute personal jurisdiction in this court.   The remaining allegations set forth in Paragraph 3 state a legal conclusion to which no response is required; if such a response is required, CF Corp denies them.

4.      CF Corp admits that Petitioner purports to assert subject matter jurisdiction under 28 U.S.C. § 1332 and that CF Corp is a citizen of Delaware and California.   The remaining allegations set forth in Paragraph 4 state legal conclusions to which no response is required; if such a response is required, CF Corp denies them.

5.      CF Corp asserts that the proper forum to resolve this action is the United States District Court for the Northern District of California and concurrently moves the Court to transfer this action to the Northern District of California in the interests of justice pursuant to 28 U.S.C. § 1404(a).   The same Award is subject to proceedings already pending in the Northern District of California in *CareFusion 202, Inc. v. Tres Tech Corporation*, Civil Action No. CV-13-2194-JCS.   Although this action was filed one day earlier than the California action based at least in part on an erroneous Certificate of Conference (Docket No. 5) filed by Tres Tech, the California action is the only one that includes the actual parties to the arbitration.   Moreover, the California court has a localized interest in the arbitration proceeding and it is better situated to decide the issues of California law that are raised by Tres Tech's motion to confirm (citing California law on prejudgment and postjudgment interest) and CF Corp's cross-motion to vacate (citing several different aspects of California law applicable to the contract).   *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 & n.10 (5th Cir. 2008).

## Response to Introduction

**6.**      CF Corp admits that Tres Tech brought claims in an arbitration proceeding that wrongly named CF Corp through the American Arbitration Association.  CF Corp is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6 of the Motion to Confirm and, on that basis, denies them.  CF Corp denies that Tres Tech is entitled to confirmation of the Award or that Tres Tech is entitled to a Final Judgment.  CF Corp further states that CF Corp did not consent to the Arbitration initiated by Tres Tech and that CF Corp did not participate in the Arbitration.

## Response to Alleged Facts And Procedural Background

**1.**      CF Corp admits that Tres Tech purports to have a right to be paid royalties on the sales and rentals of certain medical products which utilized High Frequency Ventilator ("HFV") technology.  CF Corp is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the Motion to Confirm and, on that basis, denies them.

**2.**      CF Corp denies that it paid royalties to Tres Tech, but admits that it made a confidential settlement offer to Tres Tech on June 19, 2012.  CF Corp objects to Tres Tech's submission of an off the record settlement communication to this Court.  CF Corp is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 of the Motion to Confirm and, on that basis, denies them.

**3.**      Denied.

**4.**      CF Corp denies that CF Corp filed a Response and Counterclaim to Tres Tech's Demand for Arbitration.  CF Corp is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of Paragraph 4 of the Motion to Confirm and, on that basis, denies them.

5.      CF Corp is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Motion to Confirm and, on that basis, denies them.

### Response to Arguments and Authorities

6.      CF Corp admits that the Federal Arbitration Act applies to this dispute.

7-10.   Denied.  For all of the reasons set forth in the cross-motion above, Tres Tech is not entitled to a confirmation of the Award and Tres Tech is not entitled to entry of a Final Judgment against CF Corp for any relief purportedly provided to Tres Tech in the Award.  Tres Tech is not entitled to prejudgment or postjudgment interest.  Tres Tech was not awarded pre-Award, pre-Judgment interest in the Award and Tres Tech is not entitled to such interest under California law.  *See Kanematsu Corp. v. Multimedia Acc. & Retrieval Corp.*, 2002 U.S. Dist. LEXIS 19151 at *19, Civ. A. No. C-02-1543-SC (N.D. Cal. Oct. 7, 2002).

### Response to Prayer

11.     CF Corp denies that Tres Tech is entitled to the relief requested in the final paragraph of the Motion to Confirm.


Respectfully submitted,

**GORDON & REES LLP**


By:      _/s/ Robert A. Bragalone_____
         **ROBERT A. BRAGALONE**
         Texas Bar No. 02855850
         **B. RYAN FELLMAN**
         Texas Bar No. 24072544

2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
214-231-4660 Telephone
214-461-4053 Facsimile
bbragalone@gordonrees.com
rfellman@gordonrees.com


*and*


By:     /s/ Howard Wisnia                               
**HOWARD WISNIA**
California Bar No. 184626

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
858-314-1592 Telephone
214-461-4053 Facsimile
HWisnia@mintz.com

(***Pro Hace Vice Application Pending***)


**COUNSEL FOR RESPONDENT
CAREFUSION CORPORATION**



<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been served on all counsel of record, via the Court's CM/ECF System, on the 7th day of

June, 2013.



/s/ Robert A. Bragalone                                        
Robert A. Bragalone